# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

NORMAN KEITH CHILDRESS,

      Plaintiff,

*v*.                                CASE NO. 08-CV-14356

COMMISSIONER OF          DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.    **REPORT**

### A.    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for disability and Supplemental Security Insurance benefits.

Plaintiff was 34 years of age at the time of the ALJ's decision and has completed a high school education.  (Transcript, Doc. 9 at 22.)  Plaintiff's relevant work history includes 16 years' work as a press operator and machine tool operator.  (Tr. at 95.)

Plaintiff filed the instant claims on May 23, 2005, alleging that he became unable to work on July 1, 2001.  (Tr. at 56-58.)  The claim was denied at the initial administrative stages.  (Tr. at 42-48, 147-149.)  In denying Plaintiff's claim, the Defendant Commissioner considered affective disorders and substance abuse disorders as possible bases of disability.  (*Id.*)

On January 15, 2008, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Edward Golden, who considered the case *de novo*.  In a decision dated January 25, 2008, the ALJ found that Plaintiff was not disabled.  (Tr. at 16-23.)  Plaintiff requested a review of this decision on February 22, 2008.  (Tr. at 11-12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 27, 2008, when, after the review of additional exhibits[2] (Tr. at 151-75), the Appeals Council denied Plaintiff's request for review.  (Tr.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final

at 9-10.)   On October 14, 2008, Plaintiff filed this suit seeking judicial review of the Commissioner's unfavorable decision.

### B.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the agency's determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).   The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).   If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).   Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).   *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).   In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).   *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).   "It is of course

---

decision of the Commissioner, the court can consider only that evidence presented to the ALJ.   In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

4

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

5

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in early July 2005, Plaintiff was examined at the request of the Disability Determination Program by Dr. Wladimir Zarsky. According to the doctor, Plaintiff reported that he had begun using alcohol 18 years earlier and had also used both powder and crack cocaine. (Tr. at 135.) Plaintiff described past rehabilitation and detoxification treatments. (*Id.*) Plaintiff told the doctor that he had a few personal friends, went to church, cleaned the house, and did yard work. (Tr. at 136.) The doctor described Plaintiff as cooperative, pleasant and well-behaved. (*Id.*) The doctor characterized Plaintiff's attitude and manner as appropriate. His speech was coherent, relevant and normal. The doctor felt that Plaintiff's affect was depressed. Plaintiff denied current delusions or hallucinations, although he described seeing monsters and hearing voices while on crack cocaine. (*Id.*) The doctor stated that Plaintiff was oriented and answered questions in a generally appropriate manner, although Plaintiff appeared to have poor insight into his mental state. (Tr. at 136-137.) The doctor diagnosed a non-specific depressive disorder, alcohol dependence, cocaine dependence and loss of memory brought about by Plaintiff's history of substance abuse. (Tr. at 137.)

In late May 2006, Plaintiff underwent an initial psychiatric evaluation conducted at Training and Treatment Innovations by S. Mathew, M.D.  Plaintiff complained of being depressed and isolated. (Tr. at 158.) Plaintiff denied hallucinations.  Plaintiff reported that he did well on various medications and requested that they be continued.  (*Id.*)  Plaintiff denied manic symptoms, stated that he felt depressed, and also stated that he wanted to find a job. (Tr. at 159.)  Plaintiff described a substance-abuse history consistent with that given to Dr. Zarsky. (Tr. at 160.)  The doctor found no abnormal movements or psychomotor agitation or retardation.  (*Id.*)  Plaintiff's speech was described as normal.  Plaintiff's memory appeared somewhat impaired.  (*Id.*)  Plaintiff denied suicidal or homicidal ideations and the doctor found Plaintiff alert and oriented.  The doctor diagnosed a non-specific bipolar disorder, alcohol dependency and cocaine dependency.  (Tr. at 161.)  The doctor prescribed psychotropic medications.  (*Id.*)

In mid-June 2007, Plaintiff was again seen by Dr. Mathew.  The doctor stated that Plaintiff reported that he had been "doing better.  His mood was improved.  Plaintiff stated that he has been interacting well with his family, although he continued to have difficulty with his father.  Plaintiff reported that had been going out of the house more and more chores around the house."  (Tr. at 154.)  Plaintiff's speech was described as "more spontaneous" and his affect was "brighter."  (*Id.*) Plaintiff noted that his condition had improved after the discontinuance of one medication. Plaintiff reported that he had had no recurrence of manic symptoms or impulsive behavior.  (*Id.*) Plaintiff complained of occasional depressive symptoms, and his medications had been adjusted. Plaintiff admitted, however, that he was abusing alcohol on a daily basis.  Plaintiff stated that, overall, his condition was improving and he denied any suicidal ideation or intent.  (*Id.*)  The doctor described Plaintiff's thought process as goal-oriented and noted that no delusional thoughts were expressed. (Tr. at 156.)  Plaintiff was found to be alert and oriented, although his memory

appeared impaired.  (*Id.*)  The record also contains letters from Dr. Mathew written in December 2007 and April 2008 indicating that Plaintiff continued treating at Training and Treatment Innovations.  (Tr. at 138, 153.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 1, 2001. (Tr. at 18.)  At step two, the ALJ found that Plaintiff's history of polysubstance abuse, major depressive disorder and bipolar disorder were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 18-19.)  At step four, the ALJ found that Plaintiff could not perform his previous work as a punch press operator or machine shop worker.  (Tr. at 22.)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 22-23.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

In considering Plaintiff's claims of disabling mental impairment, ALJs follow a special procedure prescribed in the Commissioner's regulations.  20 C.F.R. §§ 404.1520a, 416.920a.  This procedure requires the ALJ to list the signs, symptoms and other medical findings which establish the existence of a mental impairment.  These listings correspond to the paragraph A criteria for the various categories of mental disorders in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A, and are known as the "A criteria."

The procedure also requires that the ALJ rate the degree of functional loss resulting from the documented mental impairment(s).  20 C.F.R. § 404.1520a(b)(3).  There are four areas of

functional loss which have been found especially relevant to the ability to work.  They correspond to the paragraph B criteria of the various mental disorders listed in 20 § C.F.R. Pt. 404, Subpt. P, App. 1, and are known as the "B criteria."  The four areas are:  activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation in work or work-like settings.  In this case, as to the A criteria, the ALJ found the presence of a medically documented "substance addiction disorder" (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09).  (Tr. at 18).  Turning to the B criteria, the ALJ found that Plaintiff's mental impairment led to no restrictions in daily living, mild difficulties in maintaining social function, moderate deficiencies in concentration and no episodes of deterioration in work-like settings.  (Tr. at 19.)  Based on these findings, as noted, the ALJ concluded that Plaintiff's mental impairment was "severe," and continued with his analysis.

As to Plaintiff's physical impairments, the ALJ concluded that Plaintiff was unable to perform his past work, but was able to perform work at all exertional levels.  (Tr. at 22-23.)  More specifically, the ALJ stated that "the claimant's ability to perform in all exertional levels has been compromised by nonexertional limitations."  (Tr. at 23.)  The ALJ then identified jobs which he found the Plaintiff capable of undertaking.

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2.     Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where

10

substantial evidence supports the opposite conclusion.   *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence supports the findings of the ALJ.  I first note that there no evidence in the record supporting physical disabilities on the part of Plaintiff. As to Plaintiff's mental impairments, Dr. Mathew's most recent examination indicated that Plaintiff was "doing better," had "improved," and that he was "interacting well" with his family. (Tr. at 154.)  After a modification to his medications, the doctor reported that Plaintiff was "more spontaneous" and his affect was "brighter."  (*Id.*)  In addition, Plaintiff reported no recurrence of manic symptoms or impulsive, risky or inappropriate behavior.  Plaintiff felt he had become less aggressive and agitated after the change in medications.   (*Id.*)   Dr. Mathew reported no psychomotor agitation or retardation and no evidence of auditory or visual hallucinations or delusions.  (Tr. at 156.)  Counsel for Plaintiff points to a Mental Capacities Evaluation form completed by Dr. Mathew in mid-October 2007 (Tr. at 139-142) and argues that the ALJ improperly discounted the indications on this form that Plaintiff was moderately to severely impaired in many areas of mental functioning.  After review this record, including the clearly articulated the findings made by Dr. Mathew during his direct examinations of Plaintiff, I suggest that the ALJ properly placed greater reliance upon the medical findings and opinions appearing in the doctor's contemporaneous treatment notes.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

  s/ Charles E Binder
CHARLES E. BINDER
Dated: August 20, 2009          United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 20, 2009          By____s/Patricia T. Morris_____
Law Clerk to Magistrate Judge Binder

12